# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**SONDA ROGERS**                                                              **PLAINTIFF**

**VS.**                                    **CASE NO. 3:18CV00040 PSH**

**NANCY A. BERRYHILL, Acting Commissioner,**
   **Social Security Administration**                            **DEFENDANT**

# ORDER

Plaintiff Sonda Rogers ("Rogers"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Disability Insurance benefits (DIB), contends the Administrative Law Judge ("ALJ") erred: (1) by giving little or no weight to treating and examining physicians' opinions; (2) in determining her residual functional capacity ("RFC"); and (3) by failing to present a legally sufficient hypothetical question to elicit vocational evidence showing Rogers could perform jobs in the national economy. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on November 30, 2016. (Tr. 99-113). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from August 15, 2013, Rogers' alleged onset date, through March 22, 2017, when the ALJ ruled against Rogers.

*The Administrative Hearing:*

Rogers, who was 53 years old at the time of the administrative hearing, completed two years of college, and now lives alone. She quit working in August 2013, in part to be available for her

1

partner of 23 years, who was ill with cancer and who died in January 2014. Rogers stated she does not cook, does some cleaning, drives but sometimes panics and gets confused behind the wheel, and has problems walking. Rogers estimated she could walk for about 10 minutes before having problems, and stated she is in "constant pain." (Tr. 103). She testified to being unable to lift more than 10 pounds, and to being unable to bend and get back up. Rogers stated she takes Effexor for peripheral neuropathy, Xanax as needed, Hydrocodone three times a day, either Flexeril or Soma at night, Trazodone, and an allergy pill daily. She indicated she was not receiving any counseling or physical therapy, but attempting to manage her pain with medications. When Rogers quit working in 2013, she stated she was already having memory loss issues and missing work regularly. These problems became "dramatically worse" thereafter. (Tr. 108). Further, Rogers indicated her peripheral neuropathy has worsened. The main thing preventing her from work is "my memory capacity, panic - - terrible panic attacks" and "constant back pain." (Tr. 109-110).

Elizabeth Clem ("Clem"), a vocational expert, stated Rogers' past work as a receptionist was semi-skilled work performed at the sedentary exertional level, her past work as an office manager was skilled sedentary work, and her past work as an optometry technician was skilled light work. The ALJ posed a hypothetical question to Clem, asking her to assume a worker of Rogers' age, education, and experience, who could perform light work but only occasionally stoop, crouch, crawl, and kneel. Nonexertionally, the work would involve interpersonal contact that was incidental to the work performed (defined as a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting pay and making change), the complexity of tasks could be learned by demonstration or repetition within 30 days, the work would involve few variables, little judgment, and supervision would be simple, direct, and concrete. Clem responded that such a

2

worker could not perform Rogers' past relevant jobs but could perform other jobs, such as cashier II or housekeeper. If the hypothetical question were changed to assume sedentary rather than light work, Clem identified no jobs which Rogers could perform. (Tr. 110-112).

*ALJ's Decision:*

In his March 22, 2017, decision, the ALJ determined Rogers had the following severe impairments: degenerative disc disease, peripheral neuropathy, affective disorder, and anxiety disorder. The ALJ found Rogers did not meet any Listing, and specifically mentioned Listings 1.04, 11.14, 12.04, and 12.06. The ALJ considered the "paragraph B" criteria, finding Rogers had a moderate limitation in understanding, remembering, or applying, a moderate limitation in interacting with others, a moderate limitation with regard to concentrating, persisting, or maintaining pace, and a mild limitation for adapting or managing oneself. The ALJ also found Rogers did not meet the "paragraph C" criteria. The ALJ further determined Rogers had the RFC to perform light work with the restrictions which mirrored those posed to Clem in the ALJ's hypothetical question. The ALJ noted Rogers' consistent work record. Also, the ALJ found the prescribing of narcotic, neuropathic, anti-inflammatory pain, and psychotropic medications was consistent with Rogers' subjective allegations of pain. The ALJ found, however, that the objective medical evidence did not support Rogers' complaints, and he also determined her testimony at the hearing was "vague and general, lacking the specificity, which might otherwise make it more persuasive." (Tr. 83).

The ALJ discussed the objective medical evidence, including the findings and opinions of treating physician Dr. Charles Davidson ("Davidson"), consultative examiner Dr. Roger L. Troxel ("Troxel"), consultative psychological examiner Dr. Vicki Caspall ("Caspall"), and state agency physicians and psychologists. The ALJ ultimately found Rogers' statements concerning the

3

intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record.

Relying upon the testimony of Clem, the ALJ found Rogers unable to perform any of her past relevant work, and found she could perform the jobs of cashier II and housekeeper. Accordingly, the ALJ held Rogers was not disabled. (Tr. 77-88).

*Medical Evidence During the Relevant Period:*

Rogers was seen by treating physician Davidson on August 15, 2013, complaining of hives. Davidson noted a history of anxiety, and listed her current problems as generalized anxiety, depressive disorder not elsewhere classified, fatigue, hypothyroidism, plantar fasciitis, urticaria ("hives"), and vitamin B12 deficiency. Physical examination was unremarkable, with Davidson generally finding Rogers to be well developed, well nourished, and with no apparent distress. He diagnosed her with hives and generalized anxiety. (Tr. 368-369).

Davidson saw Rogers for an earache on October 10, 2014. (Tr. 366-367). A follow up visit related to the earache occurred on October 23, 2014. (Tr. 364-366). On both visits, physical examination was unremarkable, with the exception of the earache, and Davidson again found Rogers to be well developed, well nourished, and with no apparent distress.

Rogers saw Davidson on November 14, 2014, presenting with anxiety. Davison assessed her with generalized anxiety, vitamin B12 deficiency, and insomnia. Physical examination was unremarkable, with Davidson generally finding Rogers to be well developed, well nourished, and with no apparent distress. (Tr. 362-363).

Rogers returned to Davison on December 17, 2014, for insomnia and anxiety. Davidson noted Rogers reported her anxiety was improved, controlled at this time. He assessed generalized

4

anxiety and insomnia, and his physical findings were consistent with earlier visits. (Tr. 360-361).

In March 2015, Rogers was seen for anxiety, insomnia, and fatigue. Davidson indicated Rogers' anxiety disorder was originally diagnosed more than 5 years ago. Rogers was assessed with generalized anxiety, insomnia, and fatigue, with no change in the physical examination. (Tr. 357-358). Two other May 2015 visits to Davidson addressed a sinus infection. (Tr. 352-356). Davidson recorded sinus tenderness as well as tender lymph nodes.

In June 2015, Rogers presented with hearing loss, and Davidson also found her positive for anxiety, depression, and sleep disturbance. Davidson reported "the diagnosis of depression was made several years ago." (Tr. 349). Physical findings mirrored those in earlier visits. (Tr. 349-350).

In late July 2015, Rogers was seen for anxiety, and Davidson found her depression worsening. He also found she was bruising easily, cramping, and experiencing weakness in lower extremities. (Tr. 346-347). In August 2015, Davidson treated Rogers for a urinary tract infection and leg pain. Rogers described worsening leg pain over the prior month, with a tingling sensation in her toes. On physical exam, Davidson found pain in multiple joints of lower extremities, and also found her anxious, depressed, and tearful. (Tr. 343-344). Late in August, Rogers reported she was much improved after passing a kidney stone. (Tr. 340).

Consultative examiner Troxel saw Rogers on November 10, 2015. He noted less than full range of motion in Rogers' hips, knees, ankles, cervical and lumber spine. He also recorded that Rogers experienced pain when flexing her hips. Troxel found Rogers had a negative straight leg raising test, and also found her unable to walk on heels and toes, and unable to squat/arise from a squatting position. Troxel's diagnoses were fatigue, neuropathy in both legs, restless leg syndrome,

5

generalized anxiety, panic disorder, depression, and decreased memory. Troxel rated Rogers with a moderate decrease in her ability to walk/stand, and a mild to moderate decrease in her ability to lift and carry. (Tr. 397-401).

Psychological examiner Caspall saw Rogers on November 24, 2015. Caspall diagnosed Rogers with persistent complex bereavement disorder, and deemed her capable of adequate, socially appropriate communication and interaction. Further, Caspall opined Rogers could communicate in an intelligible and effective manner, her mental flexibility was below average and responses were slow, she could maintain focus and did not require refocusing, she observed no difficulty with persistence, and she did not display remarkable psychomotor or cognitive slowing. (Tr. 403-408).

An MRI of the lumbar spine was performed on February 17, 2016. The report showed, at L5-S1, "central protrusion of disc material which extends posteriorly approximately 4 to 5 mm. This abuts the exiting nerve root on the right but does not displace it." (Tr. 419). The impression from the imaging was "degenerative changes at the L5-S1 disc." *Id.*[1]

On February 17, 2016, Davidson executed a Medical Source Statement – Physical in which he asserted that objective medical evidence showed Rogers had low back pain and sciatica. Davidson opined Rogers had the following limitations: lift and carry occasionally or frequently less than 10 pounds, stand and walk less than 2 hours a day, stand and walk at one time without a break for 10 minutes, and sit less than 2 hours a day. According to Davidson, Rogers would need to elevate her feet in the workplace, have frequent rest periods, longer than normal breaks, and the opportunity to shift at will from sitting or standing/walking. Davidson also found Rogers unable to

---

[1] Another MRI of the lumbar spine was performed after the ALJ's opinion, in October of 2017. The impression at that time was "mild diffuse disc bulge at L5-S1 with annular fissure." (Tr. 13).

reach in all directions, and able to finger and handle for only one third of a workday. Davidson opined that Rogers could have drowsiness and fatigue affecting her ability to work as side effects of medications. Concerning environmental limitations, Davidson indicated Rogers should avoid concentrated exposure to extreme heat, high humidity, and sunlight, and avoid all exposure to extreme cold, fumes, odors, dust, gas, perfumes, soldering fluxes, solvents/cleaners, and chemicals. Davidson anticipated Rogers' impairments would result in absence from work more than 3 days a month. The form provided a space for Davidson to list the objective medical findings supporting the limitations he cited, and he responded, "Although the limitations are from patient self reports, she has a long history of back and leg pain. Recent MRI revealed degenerative changes and disc protrusion consistent with her complaints." (Tr. 421-424).

Davidson also executed a Medical Source Statement – Mental on February 17, 2016. He opined Rogers would have *moderate* limitations in the following areas: ability to understand and remember very short and simple instructions; ability to carry out very short and simple instructions; ability to interact appropriately with the general public; ability to ask simple questions or request assistance; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to be aware of normal hazards and take appropriate precautions; and the ability to set realistic goals or make plans independent of others. Davidson found Rogers would have *marked* limitations in: her ability to remember locations and work-like procedures; her ability to understand and remember detailed instructions; her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to sustain an ordinary routine without special supervision; her ability to work in coordination with or proximity to others without being distracted by them; and her ability to make simple work-related decisions. Davidson

7

opined Rogers would have *extreme* limitations in: her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with co-works or peers without distracting them or exhibiting behavioral extremes; her ability to respond appropriately to changes in the work setting; and her ability to travel in unfamiliar places or use public transportation. Davidson conceded that all of the foregoing limitations were "based on patient's self reports." He cited objective medical evidence to show that Rogers had been diagnosed with anxiety, depression, difficulty concentrating, and insomnia. (Tr. 426-428).

Rogers saw Davidson on February 18, 2016, when she presented with low back pain. The treatment notes indicate the back pain was diagnosed seven weeks earlier, was episodic, was aggravated by bending and twisting, and associated symptoms included bilateral lower extremity pain/numbness. Davidson assessed Rogers with sciatica and low back pain, and observed that an MRI showed a small disc protrusion and other degenerative changes. Davidson recommended "no heavy lifting." (Tr. 459-460).

Rogers returned to Davidson on March 24, 2016, for low back pain. Davidson assessed sciatica, low back pain, and generalized anxiety, and found there was pain with range of motion of the back. He recommended no heavy lifting and no working. (Tr. 457-458).

In May 2016, Rogers presented to Davidson with anxiety and low back pain. Davidson recorded that the pain was a chronic problem, with the latest episode starting about five months earlier. Weakness of the legs was associated with the pain. Davidson diagnosed low back pain and

generalized anxiety, and recommended no heavy lifting and no working. (Tr. 455-456).

Rogers returned to Davidson in late June 2016, presenting with low back pain and anxiety with depression. Davidson diagnosed low back pain and anxiety with depression and recommended no heavy lifting. (Tr. 453-454).

Rogers again complained of low back pain on July 22, 2016. Davidson assessed low back pain and recommended no heavy lifting and no working. (Tr. 451-452). About one month later, at a follow up visit, Rogers reported low back pain, anxiety, and allergies. Davidson diagnosed low back pain, allergies, and generalized anxiety disorder. As with previous and future visits, Davidson prescribed pain medication (e.g., hydrocodone) for the back issues, and other medications (e.g., Xanax, Effexor) for anxiety. (Tr. 449-450).

When seen on September 23, 2016, Davidson recommended no heavy lifting and cessation of cigarettes. He diagnosed low back pain, generalized anxiety, sinusitis, and tobacco abuse. The pain and anxiety medications were continued. (Tr. 446-447). In November 2016, Rogers was diagnosed with low back pain, an urinary tract infection, memory loss and altered mental status, and generalized anxiety. Davidson described her gait as unsteady and noted pain with range of motion of the back. He also recommended no heavy lifting, continued her medications, ordered an MRI of her brain, and scheduled a one month follow up appointment. (Tr. 439-443).

The MRI reflected chronic white matters changes bilaterally to the degree unusual for Rogers' age. This change was significantly worse since November 2007, although the report stated "none of the findings are acute." (Tr. 437-438).

***ALJ error in giving little or no weight to treating and examining physicians' opinions***.

Rogers first contends the ALJ erred when considering her physical impairments by assigning

"little weight" to Davidson's opinions, "some weight" to Troxel's findings, and "some weight" to the findings of the state agency physicians.

With respect to Davidson's opinions and the proper weight to be given, the Court will first consider his Medical Source Statements. In both the physical and mental Medical Source Statements, Davidson concedes that the limitations are based upon Rogers' self reports. Berryhill correctly notes that an ALJ is not required to accept opinions from a treating physician which are inconsistent with the physician's own treatment notes. *See Teague v. Astrue*, 638 F.3d 611 (8th Cir. 2011). To the extent that the Medical Source Statements are at odds with Davidson's own treatment notes, the ALJ did not err in assigning little weight to the statements. Indeed, because these Medical Source Statements were admittedly based upon self-reports and contrary to treatment notes, the ALJ was at liberty to assign no weight to them.

Assuming for the purpose of this Order that the Medical Source Statements were of no evidentiary value, the ALJ was left to consider Davidson's treatment notes, the reports of consultative examiners Troxel and Caspall, and the state agency physicians' reports in reaching his conclusion that Rogers could perform light work with some restrictions. The Court must determine if the ALJ's conclusion was supported by substantial evidence, and is mindful that reversal of the ALJ is not appropriate

> "so long as the ALJ's decision falls within the 'available zone of choice.' " *Bradley v. Astrue,* 528 F.3d 1113, 1115 (8th Cir.2008) (quoting *Nicola v. Astrue,* 480 F.3d 885, 886 (8th Cir.2007)). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola,* 480 F.3d at 886). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir.2005).

*Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008).

In resolving the issue of whether Rogers can perform light work the Court will focus primarily on Davidson's treatment notes and Troxel's report. These physicians are entitled to deference over the state agency physicians since they examined Rogers.

After seeing Rogers on November 10, 2015, Troxel concluded that Rogers had a moderately decreased ability to walk/stand, but he did not explicitly address whether she could stand and/or walk up to six hours in a workday, as required to perform light work. Troxel diagnosed Rogers with neuropathy in both legs, determined she was unable to tandem walk, unable to walk on heel and toes, and unable to squat/arise from a squatting position. He observed a limited range of motion in Rogers' knees, ankles, and cervical and lumbar spine. He did not specify a range of motion for Rogers' hips, noting only "pain" in the space provided for a numerical rating. (Tr. 397-401). Troxel's diagnoses were fatigue, neuropathy in both legs, restless leg syndrome, generalized anxiety, panic disorder, depression, and decreased memory. Troxel rated Rogers with a moderate decrease in her ability to walk/stand, and a mild to moderate decrease in her ability to lift and carry.

A fair reading of Troxel's specific findings and his conclusions does not support the notion that Rogers is capable of performing the standing and walking duties associated with light work. The neuropathy in both legs, the inability to perform numerous functions, the pain in her hips, the decreased range of motion, and Troxel's ultimate conclusion of a moderately decreased ability to walk/stand do not portray a worker capable of standing and/or walking up to six hours in a workday.

Similarly, Davidson's treatment notes do not support the ALJ's conclusion regarding light work during the entire relevant period. The ALJ conceded Rogers' prescribed medications were

consistent with her allegations of severe pain. Beginning on August 12, 2015,[2] Rogers was prescribed and took narcotics to combat her back and leg pain. The medical treatment notes from that time throughout the duration of the relevant period is replete with objective findings which are incompatible with the performance of light work. For example, Rogers reported tingling sensation in her toes, discoloration of toes, and bilateral extremity edema on August 12, 2015, and Davidson's musculoskeletal exam result was "range of motion; pain of multiple joints; of LE's" [lower extremities]. (Tr. 343-344). The February 2016 lumbar spine MRI showed a disc protrusion abutting the exiting nerve root. (Tr. 419). Davidson's physical exam one day after the MRI found pain with range of motion of the back, crepitus, tenderness, effusion, and tenderness noted in the lower back with spasms. (Tr. 460). Rogers had reported bilateral extremity pain and numbness, aggravated by bending and twisting. (Tr. 459). In March 2016, Rogers reported her back pain was aggravated by bending and twisting and increased walking, and reported relief with her narcotic medication. Davidson's examination found pain with range of motion of the back, crepitus, effusion, and tenderness of the lower back with spasms. (Tr. 457-458). When seen on May 17, 2016, Rogers reported some relief with her strong medications but also noted "essentially constant pain" which worsens with exertion/lifting. (Tr. 455). Davidson continued to find pain with range of motion of the back and the other impairments from the February and March visits. (Tr. 456). Rogers again reported constant pain, radiating, and some relief with narcotics in June 2016. She also reported numbness in her foot. Upon examination, Davidson again found back problems and pain, and also noted Rogers' gait was affected by a limp. (Tr. 453-454). The July visit to Davidson

---

[2] Rogers reported bilateral extremity pain/cramping, chronic and worsening over the prior six months, at her July 29, 2015 visit with Davidson. Davidson's musculoskeletal exam noted "generalized weakness." (Tr. 347).

mirrored the June visit in both subjective complaints and in Davidson's objective findings, with the exception that no limp was noted. (Tr. 451-452). In August, Rogers' complaints were essentially unchanged. Davidson's examination noted tenderness to the lower thoracic area. (Tr. 448-449). In September, Rogers again complained of back pain and numbness in the foot. Davidson's examination showed Rogers' gait was affected by a limp, and she had problems with range of motion, pain with range of motion of the back, crepitus, tenderness, effusion, and tenderness of the lower back with spasms. (Tr. 444-445). Rogers' subjective reports were essentially unchanged when seen by Davidson on November 16, 2016. Davidson's examination found her gait to be unsteady, with generalized weakness and the same back issues previously observed. (Tr. 439-441).

Given this background, the undersigned returns to the question of whether the ALJ erred in assessing the reports of the treating and examining physicians. In this instance, Davidson and Troxel are the only physicians to have made findings regarding Rogers' physical abilities during the relevant period. The ALJ's determination that Rogers could perform the walking and standing duties of light work is contrary to the findings of Davidson and Troxel. Put another way, the conclusion that Rogers can perform light work is outside the "zone of choice" available to the ALJ under the circumstances. The flaw in the ALJ's decision is not the improper treatment of the Medical Source Statements authored by Davidson. Instead, Davidson's treatment notes demonstrate significant problems with Rogers' ability to perform light work, and Troxel's findings of hip pain, decreased range of motion, and moderately decreased ability to walk/stand are consistent with Davidson's findings. There are no objective medical findings by examining physicians to counter the findings of Davidson and Troxel.

While the undersigned finds error by the ALJ in determining Rogers' ability to perform light

13

work, the record does not support the award of benefits beginning on the alleged onset date of August 15, 2013, as requested by Rogers.  There is a question of timing to be resolved, as it is unclear at what point during the relevant period the evidence shows that Rogers became unable to perform the walking and standing requirements of light work.  As a result, this case must be remanded to consider this question.

      The Court remands for further proceedings consistent with this Order.[3]

      IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded.  This remand is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

      IT IS SO ORDERED this 29th day of July, 2019.

                                                              _____
                                                             UNITED STATES MAGISTRATE JUDGE

---

[3] Finding merit in Rogers' first claim, it is unnecessary to examine the other assertions of error.